\*\*E-Filed 1/20/09\*\*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ZORAN CORPORATION, a Delaware corporation,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>DTS, Inc., a Delaware corporation,<br><br>　　　　　　　　Defendant. | Case Number C 08-4655 JF (HRL)<br><br>**ORDER[1] GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND TO COMPEL ARBITRATION**<br><br>RE: Docket No. 9. |

## I. BACKGROUND

Plaintiff Zoran Corporation ("Zoran") is a manufacturer of circuitry components that facilitate the playback of video data stored in the high-definition optical disc format known as Blu-ray. Defendant DTS ("DTS") licenses patented technologies required to compress and decompress the large quantities of data stored on Blu-ray discs. Zoran and DTS are members of the Blu-ray Disc Association ("Association"), a standard-setting organization responsible for developing a standard for the Blu-ray format. The organization selects certain Members'

---

[1] This disposition is not designated for publication in the official reports.

technologies for mandatory inclusion in all Blu-ray devices as part of the Blu-ray standard.  In exchange for participation in the organization, Members are required to license any of their intellectual property rights ("IPRs") adopted as part of the Blu-ray standard to other Members on fair, reasonable, and non-discriminatory ("FRAND") terms.  Zoran claims that DTS not only has failed to license its essential IPRs on FRAND terms but also has used the monopoly power it acquired through membership in the Association to engage in various forms of anticompetitive activity, including the systematic misuse of its patents, in violation of the Sherman Act.

The Bylaws of the Blu-ray Association contain an arbitration clause requiring that certain disputes concerning a Member's compliance with its FRAND obligations be resolved through arbitration.  On October 8, 2008, Zoran file a Notice of Arbitration with the International Arbitration Association, seeking to arbitrate what it views as the limited question of whether DTS is offering Zoran a license for its essential patents on FRAND terms.  On the same day, Zoran filed the instant lawsuit, alleging antitrust violations and patent misuse.  Zoran alleges that DTS initially promised to license its IPRs on FRAND terms but subsequently has attempted (1) to collect illegal double royalties on its patents, (2) to exert improper control over the use of Zoran's and other manufacturers' Integrated Circuits ("ICs"), despite the alleged fact that those technologies to not incorporate any of DTS's IPRs, (3) to use its alleged monopoly power in the relevant market to require that prospective licensees purchase components only from other DTS licensees, (4) to obtain non-reciprocal guarantees of confidentiality from Zoran, and (5) to obtain indemnity agreements from Zoran that effectively make Zoran DTS's insurer.  Zoran asks that this Court enjoin the allegedly illegal conduct, award treble damages for violations of the Sherman Act, and declare the relevant DTS patents unenforceable on the ground of patent misuse.

DTS moves to dismiss and to compel arbitration of the instant dispute on the ground that Zoran's complaint contains no more than FRAND allegations re-labeled to appear non-arbitrable.  DTS contends that even if limited aspects of the claims are distinct, those aspects are so connected with arbitrable issues that they, too, must be arbitrated.  Zoran argues that the arbitration clause in the Association Bylaws is narrow, covering only disputes over whether a

Member is offering a particular license on FRAND terms, and not whether that Member is attempting to maintain or acquire monopoly power through anticompetitive conduct, including the systematic misuse of its patents.  As explained below, the Court concludes that while certain of Zoran's allegations underlying both its antitrust and patent misuse claims merely recast the asserted FRAND violations, others clearly fall outside the scope of the arbitration clause.  In addition, although the non-arbitrable issues in some instances bear a close relationship to the alleged FRAND violations, that relationship does not permit the Court to compel arbitration of issues that are beyond the scope of the arbitration clause.  Accordingly, DTS's motion will be granted in part and denied in part.  Litigation of the non-arbitrable claims will be stayed pending issuance of the arbitrator's decision.

## II. LEGAL STANDARD FOR MOTIONS TO COMPEL ARBITRATION

When presented with a motion to compel arbitration pursuant to a contractual arbitration agreement, a district court's inquiry is limited to ascertaining (1) whether a valid arbitration agreement exists, and (2) whether the subject dispute falls within that agreement.  *See Cox v. Ocean View Hotel Corp.*, 553 F.3d 1114, 1119 (9th Cir. 2008); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986).  The scope of an arbitration agreement is governed by federal substantive law.  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999).  The Federal Arbitration Act ("FAA") reflects a strong federal policy favoring arbitration, and any doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration.  *Moses H. Cone Mem. Hospital*, 460 U.S. 1, 24-25 (1983).  Accordingly, courts long have recognized that where parties include a broad arbitration clause in their agreement, such a clause should be interpreted expansively.  For example, where an arbitration provision calls for arbitration of all disputes "arising from," "arising in connection with," or "arising in relation to" the parties' agreement, claims or allegations that merely "touch" arbitrable matters must be referred to arbitration.  *See, e.g.*, *Mitsubishi Motors Corp. v. Soler*, 473 U.S. 614, 617 (1985) (broadly interpreting clause requiring that "[a]ll disputes, controversies or difference which may arise between [Mitsubishi] and [Soler] out of or in relation to Articles I-B through V of this Agreement or for the breach thereof, shall be" arbitrated); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d

3

716, 720 (9th Cir. 1999) (broadly interpreting clause requiring arbitration of "[a]ll disputes arising in connection with this Agreement"); *Owner-Operator Independent Drivers Assoc., Inc. v. Swift Transportation Co.*, 288 F. Supp. 2d 1033, 1036 (D. Ariz. 2003) (broadly construing agreement requiring that "[a]ny disagreement or litigation arising under this Contract shall be referred to mandatory arbitration").

Conversely, it is well established that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *AT&T*, 475 U.S. at 648. Thus, while broad arbitration clauses are to be given expansive effect, "when an arbitration clause by its terms extends only to a specific type of dispute, . . . a court cannot require arbitration on claims that are not included." *Simon v. Pfizer*, 398 F.3d 765, 775 (6th Cir. 2005).[2] As a result, even if certain claims "arise from the same factual underpinnings [as claims subject to arbitration], it does not necessarily follow that [the former] must be arbitrated." *Id*. at 776. A court's "task is to look past the labels the parties attach to their claims to the underlying factual allegations and [to] determine whether they fall within the scope of the arbitration clause." *3M Co. v. Amtex Security, Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008). As the Sixth Circuit has explained,

> [w]here one claim is specifically covered by an arbitration agreement, and a second claim is not, the arbitrability of the second is governed by the extent to which the second claim is *substantially identical* to the first. On the one hand, a party cannot avoid arbitrating simply by renaming its claims so that they appear facially outside the scope of the arbitration agreement. In order to determine whether such renaming has occurred, a court must examine the underlying

---

[2] DTS asserts incorrectly that the "touch matters" standard is one of general applicability. However, as a matter purely of contract interpretation, when parties to an agreement have resolved to submit only a narrow set of disputes to arbitration, a broad construction of the agreement covering any claims that merely "touch[ed] upon" the arbitrable matter would undermine rather than effectuate the parties' intent. Lest there be any doubt on this point, the Court refers to the Ninth Circuit's unpublished decision in *Fairchild v. National Home Ins. Co.*, 17 Fed. Appx. 631 (9th Cir. Aug. 28, 2001), which clarifies that "*[o]nce it [is] decided that the arbitration clause should be interpreted broadly,* the factual allegations in the complaint 'need only touch matters covered by the contract containing the arbitration clause and all doubts are to be resolved in favor or arbitrability.'" *Id.* at 632 (citing *Simula*, 175 F.3d at 721) (emphasis added); *accord 3M Co. v. Amtex Security, Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) (noting that "*when presented with a broad clause . . .* , as long as the underlying factual allegations simply 'touch matters covered by' the arbitration provision," the claims must be arbitrated").

4

Case No. C 08-4655 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS, ETC.
(JFLC3)

> facts–when an otherwise arbitrable claim has simply been renamed or recast it will share the same factual basis as the arbitrable claim. However, a claim that is truly outside of an arbitration agreement likewise cannot be forced into arbitration even though there may be factual allegations in common. In particular, the determination that a claim requires reference to an arbitrable issue or factual dispute is not determinative.

*NCR Corp. v. Korala Associates, Ltd.*, 512 F.3d 807, 815-16 (6th Cir. 2008) (quoting *Simon*, 398 F.3d at 776) (emphasis added). The possibility of "piecemeal litigation" cannot justify compelling arbitration of non-arbitrable claims. *Simon*, 398 F.3d at 776 (citing *Bratt Enters., Inc. v. Noble Int't LTD*, 338 F.3d 609, 613 (6th Cir. 2003)).

### III. DISCUSSION

**A.   Scope of the arbitration clause**

Unlike the broad arbitration clauses discussed above, pursuant to which all disputes merely "touch[ing]" arbitrable matters must be referred to arbitration, the arbitration clause in the instant case provides only that "[a]ny dispute between a Member and another Member *over whether the Member is offering a license* under its Essential Patent(s) *on fair, reasonable and non-discriminatory terms and conditions* within the context of the provision of 16(4) shall be [arbitrated]." Bylaws § 16(5). Multiple aspects of this clause evidence its relatively narrow scope. First, the clause refers only to disputes that are specifically "over"–not merely related to or connected with–the issuance of licenses on FRAND terms. Given the large body of case law examining the broad formulations discussed above and requiring categorically that courts give expansive effect to such provisions, the choice of the phrase "over whether" is "significant." *See Tracer Research*, 42 F.3d 1292, 1295 (9th Cir. 1994) (finding omission of broader language "significant").

Second, the clause refers to disputes over whether a Member "*is offering*" another Member a license on FRAND terms. The unmistakable use of the present progressive tense indicates a considerably narrower scope of arbitrable issues than that advocated by DTS. The clause does not refer to disputes arising out of any and all alleged FRAND violations, but only to disputes over whether, at a particular moment in time, a Member is or is not offering a particular license on FRAND terms. The clause thus demonstrably does not speak to potentially broader

5

1  courses of conduct that incidentally implicate the issuance of licenses on FRAND terms.

2        Third, the arbitration clause is followed immediately by specific guidelines expressly
3  tailored for the arbitrator's use in making a FRAND determination.  The clause thus provides that
4  "[i]n evaluating the reasonableness of the disputed terms and conditions, the Arbitrator shall take
5  into account, among other things, terms and conditions (including but not limited to applicable
6  license fees) of joint license programs and individual license programs within the area of
7  licensing essential patents for optical disc systems, where (1) such terms and conditions; and (2)
8  such optical disc systems are generally accepted by the optical disc systems industry."  Bylaws
9  16(5).  The inclusion of these guidelines indicates that the clause was not intended to cover the
10  universe of claims or issues merely *related to* the parties' FRAND obligations.  This conclusion
11  is reinforced by the brief mandatory time frame for arbitration, which requires that an arbitration
12  hearing occur within ninety days from the date the arbitrator is selected, and that a decision be
13  rendered thirty days from the date of the hearing.  *See* Bylaws § 16(5).[3]

14        DTS argues in its reply in support of the instant motion that § 16(4) of the Bylaws
15  broadens the arbitration clause.  Section 16(4), which provides the "context" of section 16(5),
16  states that all Members must

17        agree that the aggregate of terms and conditions of all licenses necessary under the
      Members' Essential Patents shall not block, frustrate or harm acceptance of any
18        Blu-ray disc Format as a worldwide standard or development of products

---

[3] While the Court thus holds that claims exceeding the relatively narrow and temporally delimited scope of the FRAND inquiry may fall outside of the arbitration agreement, it does not do so, as Zoran urges, based on other terms in the agreement that purportedly create exceptions for antitrust and patent claims.  Zoran argues that § 4 of the Bylaws, which requires that all Members "comply at all times with these Bylaws and all applicable laws and regulations relevant to the activities of the BDA, including without limitation applicable antitrust laws," places antitrust claims outside the scope of arbitration clause.  Section 4, however, is silent as to *where* the issue of a Member's compliance with the antitrust laws should be resolved.  Zoran also argues that the Bylaws' explicit exemption of claims for "intellectual property infringement" removes its patent misuse claims from the coverage of the arbitration clause.  However, *other* provisions of a contract–i.e., those outside the arbitration clause itself–can "negate or limit the applicability of the arbitration clause" only if clear and unambiguous.  *Pipe Trades Council*, 835 F.2d at 1278.  While patent misuse is a possible defense to a claim of infringement, it cannot be said that "intellectual property infringement" clearly and unambiguously covers independent claims for patent misuse raised in a declaratory posture.

6

complying with any Blu-ray Disc Format or commercialization of the same. Bylaws § 16(4). While this language does urge a holistic view of the Blu-ray licensing environment, its focus is solely on the viability and success of the Blu-ray format in the marketplace. It does not broaden the limiting language in the primary clause and ultimately provides no more than "context"–as § 16(5) indicates.

With respect to whether the arbitration clause covers antitrust or patent misuse claims, it is apparent at a minimum that certain forms of systemic anticompetitive conduct, potentially including the misuse of patents, would fall outside the scope of the arbitration clause. Courts have recognized explicitly that in a consensus-oriented, private standard-setting environment, a patent holder's intentionally false promise to license essential proprietary technology on FRAND terms, coupled with a reliance on that promise by a standard-setting organization when including the technology in a standard and the patent holder's subsequent breach of that promise, is actionable anti-competitive conduct under the Sherman Act. *See, e.g.*, *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007). Such a violation, where present, goes well beyond the question of whether the terms of a license, offered at a particular time to a particular prospective licensee, are "fair, reasonable, and non-discriminatory." Each of the three FRAND criteria speaks to the relationship between the patent holder and the licensee and does not reach the larger question of whether the patent holder has engaged in conduct designed to suppress competition through the exercise of monopoly power.

**B.    Zoran's antitrust and patent misuse claims**

As the foregoing discussion indicates, Zoran's antitrust and patent misuse claims do not fall entirely within the subject arbitration clause, and the mere fact that those claims "require reference" to or even "arise from the same factual underpinnings" as the FRAND claims does not require arbitration of the former if they are not within the scope of the arbitration clause. *Simon v. Pfizer*, 398 F.3d 765, 775 (6th Cir. 2005). Similarly, to the extent Zoran alleges that DTS has misused and continues to misuse its patents in a broader attempt to stifle competition, its allegations of patent misuse cannot be forced into the narrower inquiry of whether DTS is offering Zoran a license on FRAND terms. Nonetheless, it is clear that many of Zoran's

allegations are arbitrable. Accordingly, the allegations must be examined in detail to determine which are arbitrable and which properly may be heard in a court.

Even a cursory inspection of Zoran's complaint reveals that numerous allegations underlying both its antitrust and patent misuse claims raise no more than arbitrable FRAND issues. Many of these allegations not only are inseparable from the issue of whether DTS is offering Zoran a license on FRAND terms but actually are labeled as FRAND violations. Zoran sets forth the core of DTS's alleged wrongdoing in ¶¶ 59-87 of the complaint. In ¶¶ 59-66, it alleges no more than that DTS, by leveraging its patents, "seeks to extract certain rights and obligations over Zoran ICs [Integrated Circuits] that are neither designed nor intended to run DTS's audio decompression algorithm," Complaint ¶ 59, and that these "overreaching terms are discriminatory . . . , unfair, [and] unreasonable," *id*. ¶ 66. Similarly, in ¶¶ 77-79, Zoran alleges that DTS violates its FRAND obligations by "requiring that Zoran treat information provided by DTS under the [proposed licensing agreement] as confidential . . . but refus[ing] to undertake that obligation in return." *Id*. ¶ 77. As Zoran itself states in the complaint, this allegation pertains to DTS's compliance or noncompliance with its FRAND obligations. Finally, in ¶¶ 80-81, Zoran alleges that DTS is demanding indemnity provisions that essentially make Zoran its insurer. This allegation, along with a series of miscellaneous FRAND-based allegations set forth in ¶ 82, states no more than a FRAND claim. For obvious reasons, all of the foregoing allegations are subject to arbitration.[4]

By contrast, ¶¶ 67-76 contain allegations that go considerably beyond the question of whether DTS is offering a particular license on FRAND terms. These allegations relate directly to Zoran's antitrust claim, which requires a broader view of DTS's allegedly wrongful conduct. Zoran alleges that DTS systematically seeks through its licensing agreements to obtain the benefit of certain audit rights, licensee reporting obligations, and entitlements "to extract

---

[4] To the extent Zoran claims that this conduct is part of DTS's allegedly wider scheme to maintain the monopoly power it allegedly acquired through false promises to license its essential patent rights on FRAND terms, the Court may consider these allegations in light of the arbitrator's determination as to whether the proffered license terms in fact are fair, reasonable, and nondiscriminatory.

8

1  potential penalties for third-party infringement of DTS's IPRs, without any proof of such

2  infringement." *Id*. ¶ 74.[5] Moreover, in ¶¶ 75-76, Zoran alleges that

> DTS includes in its license agreements with system manufacturers provisions precluding such licensees from purchasing ICs from any company not certified by DTS as a 'qualified supplier.' A 'qualified supplier' is a supplier who has a license from DTS. Thus, even though Zoran's ICs contain no DTS intellectual property–and therefore would not infringe DTS's patents–DTS uses its monopoly power position in the technology market to prevent Zoran's entry into the product market . . . . by threatening its systems manufacturer licensees with breach of their DTS license agreement should they purchase chips from non-'qualified' suppliers like Zoran.

Complaint ¶ 75. The ultimate question raised by Zoran's claims–and specifically by the foregoing allegations–is whether DTS promised to offer licenses on FRAND terms in exchange for adoption of its technology as part of the Blu-ray standard, but intended to–and eventually did–commit the foregoing systematic violations, including patent misuse, in order to maintain its monopoly power. That question goes well beyond the arbitrable issue of whether DTS is offering Zoran a license on FRAND terms.

## IV. CONCLUSION

Given the clarity of Ninth Circuit case law requiring the expansive application of arbitration agreements using any one of a familiar set of broad phrases, parties to an agreement need only employ such phrases to ensure the arbitrability of all claims arising from their relationship or a particular aspect thereof. In the instant case, the parties have not done so, and the arbitration clause at issue thus is not susceptible of the interpretation that DTS urges. DTS relies heavily on the presumption of arbitrability and the rule that all doubts must be resolved in favor of arbitration. However, the Court declines to manufacture doubt or to retreat behind the presumption of arbitrability and thereby ignore the unmistakable limits of the subject clause. Consistent with the foregoing discussion, DTS's motion will be denied to the extent that it seeks outright dismissal of the instant action. To the extent DTS seeks to compel arbitration of Zoran's claims, its motion will be granted with respect to all essentially FRAND-based issues and denied

---

[5] As indicated above, to the extent these allegations pertain solely to licensing terms currently offered to Zoran, the arbitrator should decide whether the terms satisfy DTS's FRAND obligations.

with respect to the non-arbitrable issues identified above. In light of the factual commonalities between Zoran's arbitrable FRAND allegations and those allegations properly decided in the first instance by this Court, and given the attendant possibility that some of the arbitrator's findings may result in issue preclusion, the action will be stayed pending the arbitrator's determination on the FRAND issues.[6]

**IT IS SO ORDERED.**

DATED: 1/20/09

_____
JEREMY FOGEL
United States District Judge

---

[6] "The trial court possesses the inherent power to control its own docket and calendar," *Mediterranean Enters, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)), and

> may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.

*Id.* (quoting *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)). In this instance, the risk of prejudicial delay is minimal given the accelerated schedule of the arbitral proceedings, and is outweighed by the obvious advantages of awaiting the arbitrator's decision.

10

Case No. C 08-4655 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS, ETC.
(JFLC3)

1  This Order has been served electronically upon the following persons:

2  hristopher James Beal     cris.beal@dlapiper.com, debby.brady@dlapiper.com

3  Edward D. Johnson     wjohnson@mayerbrown.com

4  Eric Evans     eevans@mayerbrown.com

5  Jeffrey M. Shohet     jeffrey.shohet@dlapiper.com

6  Mark Fowler     mark.fowler@dlapiper.com, larry.landry@dlapiper.com

7  Mark H. Hamer     mhamer@graycary.com

8  Michael Gerald Schwartz     michael.schwartz@dlapiper.com, stacy.murray@dlapiper.com

9  Veronica Lynn Jackson     veronica.jackson@dlapiper.com